UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
YONA WEINBERG

                        Petitioner,

            -against-

WARDEN RIKER'S ISLAND CORRECTIONAL
FACILITY and ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                        Respondent.
-----------------------------------------------------------X

<span>NOT FOR PUBLICATION</span>
**MEMORANDUM & ORDER**
11-CV-0614(CBA)

**AMON, Chief United States District Judge.**

Petitioner Yona Weinberg, proceeding pro se, seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254, challenging his conviction following a bench trial in the Supreme Court of

New York, Kings County, of seven counts of Sexual Abuse in the Second Degree, N.Y. Penal

Law 130.60(2), and two counts of Endangering the Welfare of a Child, N.Y. Penal Law

260.10(1). The petitioner raises three challenges to his conviction: (1) the trial court violated

Weinberg's right under the Sixth and Fourteenth Amendments to confront the witnesses against

him when it excluded evidence of the victim's motivation to fabricate testimony; (2) the

prosecutor engaged in misconduct by repeatedly referencing Weinberg's religion in a negative

way throughout trial; and (3) the prosecutor engaged in misconduct by informing the trier of

fact before trial of Weinberg's prior bad acts. He also challenges his sentence on the grounds

that the trial court was improperly motivated by (1) a desire to send a message to the Orthodox

Jewish community, and (2) a desire to punish Weinberg for exercising his constitutional rights.

## BACKGROUND

Weinberg, a Jewish bar mitzvah tutor and licensed social worker, was a therapist for thirteen year-old D.K. and a bar mitzvah tutor for twelve year-old S.K, as well as other boys.[1] After a bench trial before the late Honorable Gustin Reichbach of the Supreme Court of New York, Kings County, Weinberg was convicted on June 24, 2009 of seven counts of Sexual Abuse in the Second Degree, N.Y. Penal Law § 130.60(2), and two counts of Endangering the Welfare of a Child, N.Y. Penal Law § 260.10(1), for sexually abusing D.K. and S.K. during tutoring and/or therapy sessions. Weinberg was acquitted of all charges relating to two other boys: one count of Course of Sexual Conduct Against a Child in the Second Degree, N.Y. Penal Law § 130.80(1)(b), one count of Attempted Sexual Abuse in the Second Degree, N.Y. Penal Law §§ 110.00/130.60(2), two counts of Sexual Abuse in the Second Degree, N.Y. Penal Law § 130.60(2), and four counts of Endangering the Welfare of a Child, N.Y. Penal Law § 260.10(1).

On September 29, 2009 the trial court sentenced Weinberg to seven months' imprisonment on each count of Endangering the Welfare of a Child, to run concurrently, and six months' imprisonment on each count of Sexual Abuse in the Second Degree, also to run concurrently. (Sentencing Tr. 54-55.) Accordingly, the defendant was sentenced to a total term of thirteen months' imprisonment.

Weinberg moved to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20, to stay execution of the judgment pending appeal pursuant to New York Criminal Procedure Law § 460.50, and for bail pending appeal pursuant to New York Criminal Procedure Law § 530.50. In support of the motion to set aside his sentence, Weinberg raised

---

[1] The Court refers to all juvenile victims by their initials to preserve their anonymity. For some unexplained reason, Weinberg's counsel has failed to follow this convention in this petition.

the same two sentencing claims that he raises in this federal habeas petition; namely, that the trial court was motivated by improper factors to impose a longer sentence. During proceedings on November 19, 2009, the trial court denied Weinberg's motion to set aside his sentence. (Tr. of November 19, 2009 Proceedings at 26.) The trial court granted Weinberg a stay of execution of judgment and bail pending appeal.

Weinberg appealed his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department. He asserted the same two sentencing claims, as well as the three challenges to his conviction that he raises in this federal habeas petition. By decision dated July 20, 2010 the Appellate Division affirmed Weinberg's judgment of conviction and sentence. People v. Weinberg, 75 A.D.3d 612 (N.Y. App. Div. 2010). The New York Court of Appeals denied leave to appeal on October 4, 2010. People v. Weinberg, 15 N.Y.3d 896 (2010).

Weinberg filed this federal habeas petition on February 7, 2011, asserting the same five grounds for relief that he raised on direct appeal.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal habeas petitioner is entitled to relief from a state court's "adjudication on the merits" of a claim only if it resulted from a decision that "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). The Supreme Court has explained the requirements of § 2254(d) as follows:

3

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-413. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

## DISCUSSION

### 1. Weinberg's Confrontation Clause Claim

Weinberg argues that the trial court violated his constitutional rights under the Confrontation Clause of the Sixth Amendment when it excluded certain communications between himself and both D.K. and D.K.'s mother. In this case, defense counsel sought to present evidence at trial about the following alleged incidents:

1) In late 2007, D.K.'s mother told Weinberg that an unnamed student's parents had complained at school that D.K. had taken their son into a bathroom and refused to let him leave until the boy showed D.K. his penis. Weinberg called the school to report the incident. As a result, D.K. was ultimately was barred from the bathroom without supervision;

2) According to Weinberg, D.K. described during a therapy session a sexual relationship he had with a boy named Y.S, which prompted Weinberg to ask Y.S.'s school to investigate the relationship. D.K. later explained that Y.S. had ended the sexual relationship because someone had discovered it. D.K. stated that he wanted to kill the person who had revealed them.

3) According to the petition, D.K. twice attempted to touch Weinberg's penis during therapy, asked about his pubic hair, and expressed having sexual feelings for him; and

4) During therapy with Weinberg, D.K. described an incident in school when a group of older boys in his class removed D.K's clothing and fondled his private parts, describing it to D.K. as "normal."

(Trial Tr. 207.) Weinberg argued at trial that this evidence was highly probative of whether D.K. fabricated his claims that he was sexually abused by Weinberg. Weinberg also argued that his constitutional right to confront D.K. trumped any assertion of privilege that might otherwise render these statements inadmissible, and that New York's Rape Shield Law did not apply to bar the statements.

As to incident (1), the trial court allowed evidence that Weinberg called the school to report the incident involving D.K.in the bathroom, finding that because the phone call resulted in D.K. being barred from the premises it could have caused hostility or bias on the part of D.K. towards Weinberg. (Id. at 208-09.) However, the court did not allow evidence as to the particulars of the underlying incident in the bathroom because it was "not particularly relevant" to Weinberg's defense strategy of showing bias and thus "insufficient to overcome the Rape Shield Law." (Trial Tr. at 207.) As to incident (2), the trial court allowed limited evidence regarding D.K.'s alleged relationship with Y.S., the fact that Weinberg alerted others about that relationship, and D.K.'s reaction to being found out, as such evidence was similarly relevant to show potential bias on the part of D.K. against Weinberg. (Trial Tr. at 208, 559.) As to (3), defense counsel was permitted to put on evidence, through both D.K.'s cross-examination and Weinberg's direct testimony, about whether D.K. ever tried to touch Weinberg before Weinberg touched him and D.K.'s alleged sexual feelings for Weinberg. (Id. at 263-64, 566-72.) Finally, as to (4), the court found that "the incident involving this group of boys is exactly the type of testimony as that the Rape Shield Law is designed to prohibit, so that won't be admissible." (Id. at 208.)

Weinberg seeks habeas relief on the grounds that he was precluded from cross-examining D.K. regarding (1) the details of the bathroom incident that led Weinberg to call the school and (4) the incident with the group of older boys in the classroom, which violated his confrontation rights. Weinberg argues that the excluded communications are highly probative of whether D.K. initiated sexual conduct with Weinberg, as opposed to the other way around as D.K. testified. Weinberg argues that this evidence also strongly supports Weinberg's defense at trial that D.K and his mother were motivated to fabricate a story that Weinberg initiated inappropriate sexual contact in order to paint D.K. as a passive victim rather than initiator. According to Weinberg, the trial court's "highly restrictive rulings" deprived him of his right to confront these witnesses.

Weinberg advanced these arguments on direct appeal. The Appellate Division affirmed the trial court's ruling, stating:

> The Supreme Court did not deprive the defendant of his constitutional right of confrontation by prohibiting him from cross-examining one of the complainants or eliciting testimony about that complainant's prior sexual conduct. Contrary to the defendant's contention, such evidence was not relevant to support his defense that this complainant's testimony was fabricated. The defendant was given ample opportunity to develop evidence to support his position that this complainant had a motive to fabricate his testimony. Accordingly, evidence of this complainant's prior sexual conduct was irrelevant and properly excluded by the Supreme Court under the rape shield law.

Weinberg, 75 A.D.3d at 613 (citations omitted). This merits determination is entitled to AEDPA deference.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). And although the "main and essential purpose of

confrontation," Davis v. Alaska, 415 U.S. 308, 315 (1974) (quoting 5 J. Wigmore, Evidence §

1395 (3d ed. 1940)), is to secure the opportunity for cross-examination, it does not "prevent[] a

trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a

prosecution witness," Van Arsdall, 475 U.S. at 679. "On the contrary, trial judges retain wide

latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." Id. In essence, although the Confrontation Clause secures an opportunity for

effective cross-examination, it does not give a defendant the absolute right to cross-examine in

whatever way he or she might wish. Id.

Weinberg has not established that the Appellate Division's ruling was contrary to or an

unreasonable application of clearly established federal law. Contrary to Weinberg's assertion,

the trial court's rulings on these evidentiary issues were not "highly restrictive." Defense

counsel was given significant leeway to cross-examine D.K about his prior relationship with

Y.S., and about whether he had ever initiated sexual contact with Weinberg. (Trial Tr. 263-71,

280-82.) Defense counsel also was permitted to cross-examine D.K.'s mother about the phone

call Weinberg made to school authorities following the alleged bathroom incident, which

resulted in restrictions on D.K.'s access to the school restroom. (Trial Tr. 239-242.) Weinberg

was given ample opportunity through these lines of questioning for effective cross-

examination, and the limitations imposed by the Court were reasonable. Certainly, Weinberg

has not shown that the state court's rejection of his confrontation claim was so lacking in

justification that fairminded jurists would all agree that the decision was wrong. See

Harrington, 131 S. Ct. at 786. Accordingly, Weinberg is not entitled to habeas relief on this claim.

## 2. Allegations of Prosecutorial Misconduct

### a. The prosecutor's references to Weinberg's religion

Weinberg argues that his due process rights were violated at trial when the prosecutor repeatedly suggested that the trial court draw negative inferences against Weinberg because of his religious beliefs. In particular, Weinberg argues that the prosecutor improperly cross-examined him about (1) the lack of sexual education in Jewish schools, (2) the fact that masturbation is considered a sin under Jewish law, and (3) the principle in the Jewish faith known as "meseira," which according to Weinberg's testimony at trial encourages members of the Jewish faith to handle problems "in-house" rather than turn a member of the Jewish faith over to civil authorities. (Tr. 667-68, 686.) Weinberg also argues that the prosecutor improperly relied on Weinberg's testimony about "meseira" to argue in summation that the trial court should discount Weinberg's credibility due to his expressed belief that Jewish law "trumps" New York law.

The Appellate Division found this claim "unpreserved for appellate review," citing N.Y. Crim. P. Law § 470.05, New York's contemporaneous objection rule. Weinberg, 75 A.D.3d at 613. Indeed, defense counsel failed to object on the above grounds during trial. The Appellate Division went on to hold that, "[i]n any event," Weinberg's claim about the prosecutor's cross-examination was "without merit" and that, even if the trial court erred in permitting the prosecutor's statements about Weinberg's religious beliefs during summation, any such error "was harmless in the face of the overwhelming evidence of the defendant's guilt and in recognition of the presumption that the trial court, as factfinder, will consider only competent

evidence in reaching its verdict and is uniquely capable of distinguishing those issues properly before it from those which are not." Id. at 614 (citations omitted).

The Appellate Division's rejection of this claim based on an independent and adequate state procedural ground precludes federal habeas review of this claim. See Harris v. Reed, 489 U.S. 255, 262 (1989). The Appellate Division's decision clearly invoked a state law procedural ground for rejecting Weinberg's claim. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.). Further, courts in this Circuit have repeatedly recognized that N.Y. C.P.L. § 470.05 is and adequate and independent state ground. See Downs v. Lape, 657 F.3d 97, 102–04 (2d Cir. 2011); Gonzalez v. Cunningham, 670 F.Supp.2d 254, 261 (S.D.N.Y. 2009) (citing Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007)); Felder v. Goord, 564 F.Supp.2d 201, 223 (S.D.N.Y. 2008)). As Weinberg has failed to advance any argument regarding cause for the procedural default or suggesting that a fundamental miscarriage of justice would occur if his claim is not addressed, the Court finds this claim barred by the procedural default doctrine. See Harris, 489 U.S. at 262 ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" (citation omitted)).

In any event, Weinberg's claim is without merit. To obtain federal habeas relief based on improper prosecutorial remarks, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, Weinberg must show that "the prosecutors'

comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see United States v. Young, 470 U.S. 1, 11-12 (1985). The government's references to Weinberg's religious beliefs during trial did not "so infect" the trial with unfairness as to deny Weinberg the right to a fair trial, particularly in light of the fact that this case centered around Weinberg's role in the Jewish community and the relationship he developed with the victims during religious tutoring and counseling sessions. The prosecutor's comments during summation were fair comment on the evidence, as Weinberg did testify on both redirect examination and re-cross examination that, because of his religious beliefs in "meseira," he failed to comply with certain secular legal reporting obligations that he had as a social worker. (Tr. 685-86, 690.)

b. The prosecutor's references to Weinberg's prior bad acts

Weinberg also argues that his due process rights were violated when prior to opening statements the prosecutor advised the trial judge, who was the trier of fact in this case, of Weinberg's prior bad acts involving three witnesses. Though the prosecutor did not go into specifics, he indicated that the witnesses would provide "rebuttal type" evidence, intimating that they also claimed to have been abused by Weinberg. He described one witness "who is now an adult [and] had the same conversations [regarding sexual topics with Weinberg] when he was the same age [as the complaining witnesses]." (Trial Tr. at 51, 54.)

Apart from contesting the propriety of admitting the prior acts as an evidentiary matter, defense counsel did not object to the discussion before the trial court; accordingly, the Appellate Division found this claim "unpreserved for appellate review," citing N.Y. Crim. P. Law § 470.05. Weinberg, 75 A.D.3d at 613. See Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (noting that New York courts interpret § 470.05 to require "at the very least, that any

matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave it the opportunity to remedy the problem and thereby avert reversible error." (alteration and internal quotation marks omitted)). The Appellate Division further found that the claim was "in any event, . . . without merit." Id. (citation omitted). As with Weinberg's other claim of prosecutorial misconduct, Weinberg makes no attempt to argue cause for the default or resulting prejudice, nor does he demonstrate a fundamental miscarriage of justice. Thus, Appellate Division's rejection of this claim based on petitioner's failure to comply with New York's contemporaneous objection rule, an independent and adequate state ground, precludes federal habeas review. Harris, 489 U.S. at 262; Richardson, 497 F.3d at 217-220.

Even if this claim were not barred by the procedural default doctrine, Weinberg would not be entitled to relief. When defense counsel later raised the issue of Weinberg's prior bad acts at sentencing, the trial court expressly stated that it was "not considering any uncharged crimes" and that it had "heard the evidence as it relates to the victims in this case and that's the basis of the court's decision." (Sentencing Tr. at 23.) Weinberg has not clearly not shown that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. at 181.

### 3. Sentencing Issues

Weinberg was sentenced to 13 months' imprisonment. He does not dispute that this sentence was within the statutory range prescribed by New York law, pursuant to which Weinberg faced a maximum term of incarceration of 24 months. He challenges his sentence on the grounds that it was improperly imposed in order to punish the Orthodox Jewish community and to punish Weinberg for exercising his constitutional rights.

Substantial deference is owed to the discretion exercised by the trial court in making

sentencing decisions. See Bell v. Ercole, 631 F. Supp. 2d 406, 419 (S.D.N.Y. 2009). And

because "it is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), "[c]laims arising out of

a state court sentencing decision are generally not cognizable on federal habeas review." Pillco

v. Bradt, 2010 WL 3398467, at *2 (S.D.N.Y. Aug. 26, 2010); see also Gatling v. Mantello,

2001 WL 1868126, at *5 (S.D.N.Y. June 1, 2001) ("Ordinarily, a state court sentencing

decision does not present a constitutional issue for review if it falls within the range prescribed

by state statute."). However, "the sentencing process, as well as the trial itself, must satisfy the

requirements of the Due Process Clause." Gardner v. Florida, 430 U.S. 349, 358 (1977). Thus,

a sentence cannot be based upon adverse inferences drawn from constitutionally protected

conduct, United States v. Goodwin, 457 U.S. 368, 372 (1982), or "factors that are

constitutionally impermissible or totally irrelevant to the sentencing process, such as for

example the race, religion, or political affiliation of the defendant." Zant v. Stephens, 462 U.S.

862, 885 (1983); see also United States v. Leung, 40 F.3d 577, 586 (2d Cir. 1994) ("A

defendant's race or nationality may play no adverse role in the administration of justice,

including at sentencing."). The Court addresses Weinberg's sentencing claims in turn.

> a. Sentencing based on Weinberg's religion

Weinberg argues that the sentencing court abused its discretion by sentencing the

defendant based on a desire to punish the Orthodox Jewish Community. Weinberg's claim is

based largely on the following statement made by the trial court during sentencing:

> And while the crimes the defendant stands convicted of are bad
> enough, having heard the evidence in this case and reviewed the
> submission, what is even more troubling to the Court is a

> communal attitude that seems to impose greater opprobrium on
> the victims than the perpetrator.

(Sentencing Tr. 31.) This statement was made in response to certain letters submitted by

defense counsel prior to sentencing, in which members of the Orthodox Jewish Community

expressed support for Weinberg. (Sentencing Tr. 15-16, 30-32.) The court explained at

sentencing that over ninety letters were submitted, most of which expressed a certain level of

"disbelief in these accusations and how they are completely out of character for the defendant."

(Id. at 32.) Some letters went so far as to say that, verdict notwithstanding, the charges were

simply untrue and should not be considered by the sentencing court. (Id. at 32-33.) The court

emphasized at sentencing that it was not dealing with mere "accusations"; Weinberg was

convicted of the offenses charged. (Id. at 32.) The court stated that it was extremely troubled

by the fact "that not a single letter in these 90 plus letters displays any concern or any sympathy

or even any acknowledgement for these young victims which, frankly, I find shameful." (Id. at

33.)

Though the sentencing court expressed concern regarding "a very troubling communal

attitude that seeks to blame, indeed punish victims who seek justice from larger – from the

larger society . . . from civil society," (id. at 31), the record simply does not bear out

Weinberg's contention that the sentence imposed was designed to punish the Orthodox Jewish

Community for the beliefs expressed in these letters. Rather, the court discussed these

submissions to "make it clear that the defendant is not the victim here" and that the victims in

this case were the children. (Id. at 33.) The court explained that it believed a jail sentence was

appropriate in this case because "anything less . . . would offend not only the appropriate sense

of justice but would also further, in some way, if not penalize, sort of indicate to the victims

here who have . . . suffered the opprobrium of their own community that somehow what

happened to them was not important." (Id. at 35.) These comments indicate that the trial court

sought to impose a sentence that accurately reflected the suffering of the victims in this case,

not one designed to punish the Orthodox Jewish Community for the beliefs expressed in the

submissions to the court. Compare Leung, 40 F.3d at 585 (remanding for resentencing where

trial court specifically stated that "the purpose of [the] sentence here is to punish the defendant

and to deter others, particularly others in the Asiatic community" from coming to the United

States and breaking the law).

Further, the trial court made clear that a desire to punish the Orthodox Jewish

community played no part in its sentencing determination during the hearing on petitioner's §

440.20 motion to set aside the sentence. The trial court reminded counsel that Weinberg was

given "a sentence that was just slightly more than half" of the maximum sentence faced and

stated that "if I was interested in sending a message rather than setting a sentence that had to do

with the fact[s] of this case, I could have easily imposed the maximum sentence which is what

the People were asking for . . . ." (Tr. of Nov. 19, 2009 Hr'g at 4.) The court further explained

that "[t]o the extent that there was reference to anyone other than the defendant [at sentencing],

it was specific reference to the letters that were sent to the Court on behalf of the defendant and

the absence of any acknowledgement in those 90 letters that the defendant was guilty of the

crime for which he stands convicted." (Id. at 6.) The court held that it had sentenced Weinberg

for the crimes he committed and rejected Weinberg's claim as "unsupportable." (Id. at 19.)

Even after rejecting the petitioner's claim, the trial court nevertheless expressed its

"sensitiv[ity] to appearances" and "consider[ed] vacating the sentence and sending it to another

judge to impose the sentence on the defendant." (Id. at 19-20.) When the trial court asked the

parties to be heard on this issue, Weinberg's counsel stated that he was not seeking this form of

relief, but simply wanted the trial court to vacate the original sentence and impose a lower sentence. (Id. at 20-22.) This response causes Weinberg's claim to ring particularly hollow. It is clear to the Court that Weinberg is concerned not about impropriety or impartiality, but merely with the length of his sentence, which does not give rise to a claim for federal habeas relief.

The Appellate Division upheld Weinberg's sentence, Weinberg, 75 A.D.3d at 614, and, based on the record as described above, the Court cannot find that the decision was "contrary to" or a "unreasonable application" of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). Accordingly, Weinberg is not entitled to habeas relief on this claim.

b. Sentencing based on Weinberg's decision to exercise his constitutional rights

Weinberg also argues that the trial court imposed a lengthier sentence in order to punish Weinberg for exercising his constitutional rights to remain silent, go to trial, and appeal his conviction. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." United States v. Goodwin, 457 U.S. 368, 372 (1982) (internal quotation marks omitted). Accordingly, a sentencing court may not increase a defendant's sentence because he invokes his right to remain silent at the sentencing phase of trial. See Mitchell v. United States, 526 U.S. 314, 328-29 (1999) (holding that the Fifth Amendment's privilege against self-incrimination applies in the sentencing phase of a criminal proceedings); United States v. Whitten, 610 F.3d 168, 195 (2d Cir. 2010).

However, federal courts recognize a distinction between increasing the severity of a sentence and refusing to grant leniency at sentencing when a defendant fails to accept responsibility for his actions. Whitten, 610 F.3d at 195. Thus, "[i]t is permissible for a sentencing court to consider that, 'if [the defendant] were willing to assist us to bring the other

15

person to justice, [it would be] very easy to be reasonable and lenient,' but it is unconstitutional to impose consecutive rather than concurrent sentences solely on account of the defendant's failure to cooperate.'" Id.; see also Mitchell, 526 U.S. at 330 ("Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines, is a separate question.").

It is clear from the record that the trial court considered what it viewed as Weinberg's lack of remorse in considering whether to impose a more lenient sentence that it would have otherwise considered, rather than a harsher one. Defense counsel explained to the court at sentencing that in light of Weinberg's intent to appeal the verdict, counsel had advised Weinberg not to make any statements at sentencing. (Sentencing Tr. at 18-19.) Defense counsel argued that because Weinberg was choosing to remain silent while his appeal was pending, the trial court should not punish him for failing to show a lack of remorse. (Id. at 19.) The trial court agreed that it "was certainly the defendant's right to stand mute, in terms of possible sentencing" and that the court would not "punish a defendant for exercising his right." (Id.) However, the trial court made clear that "the defendant, by taking that position, is not entitled to the consideration that might attach to an expression of contrition and remorse." (Id.) The trial court went on to emphasize that the "defendant exercised his right to testify at trial" and, in the trial court's view, "repeatedly and obviously lied during the course of his testimony." (Id. at 34.) Thus, although the court "appreciate[d] the reason for" Weinberg's decision to remain silent at sentencing, it found the defendant's "continuing refusal to accept responsibility" distressing, particularly when considered in conjunction with the apparent attitude in Weinberg's community to "penalize the victims rather than the perpetrator." (Id. at

16

34-35.) In light of all of these considerations, and due to a desire to indicate to the victims that the court was recognizing the seriousness of what happened to them, the court decided that a jail sentence, rather than the probation with various restrictions that the defense had requested, was appropriate. (Id. at 29-30, 35.)

In determining that a jail sentence was warranted in this case, the trial court was well within its discretion to consider what it viewed as Weinberg's lack of remorse at sentencing. See El v. Artuz, 105 F. Supp. 2d 242, 255 (S.D.N.Y. 2000) ("Although a defendant has a right to remain silent, a defendant's refusal to acknowledge any responsibility or to show any remorse in the face of clear evidence of wrongdoing is surely an appropriate factor for a sentencing judge to consider when choosing an appropriate sentence from within a range of statutorily-permissible sentences."); e.g., United States v. Horton, 381 F. App'x 7 (2d Cir. 2010) (finding that the sentencing court properly considered relevant factors, including defendant's remorse). The record indicates that in so considering, the trial court properly distinguished between penalizing Weinberg for asserting a constitutional right and declining to grant leniency based upon a permissible factor. The Appellate Division's affirmance of petitioner's sentence, Weinberg, 75 A.D.3d at 614, was not contrary to or an unreasonable application of clearly established Supreme Court law. Accordingly, Weinberg is not entitled to relief on this claim.

For the foregoing reasons, the Court finds that the trial court did not base Weinberg's sentence on constitutionally impermissible factors, thereby depriving him of due process. Gardner v. Florida, 430 U.S. at 358; Goodwin, 457 U.S. at 372; Zant, 462 U.S. at 885. Accordingly, Weinberg's sentencing claims do not provide a basis for federal habeas relief.

## CONCLUSION

Weinberg has not met his burden of establishing that the state court's denial of his claims for relief was "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). Accordingly, the habeas petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.


SO ORDERED.

Dated: Brooklyn, N.Y.
      November 15, 2012

                                          s/Carol Bagley Amon
                                          Carol Bagley Amon
                                          Chief United States District Judge